Moncure, P.,
after stating the case, proceeded :
When, a contract is made by an agent, the question *294 whether the principal or agent, or both, are liable, is, generally, a question of intention. The principal alone is liable if the facts are all known, and there is no special reason for holding the agent liable, or an intention to make him liable is not plainly indicated by the form of the contract or otherwise. The contract is made for the principal’s benefit, is in fact the principal’s contract, by the procuration of the agent, and it is just and right that the principal, and not the agent, should bear the burthen directly as he must ultimately, unless there be some good reason for the contrary. The agent is never liable unless it appear to have been intended by the parties to the contract that he should be liable : always presuming of. course that the agent has strictly pursued his authority; for if he has not, he is personally liable. When the contract is by parol, an intention to make the agent liable must appear from the facts and circumstances of the case, as they are shown in evidence. When the contract is in writing, an intention to make the agent liable, must ajjpear on the face of the writing, or from the language therein used ; and if such intention so appear, parol evidence to show the contrary is inadmissible; upon the familiar principle that parol evidence is inadmissible to vary or contradict a written contract. This rule, as is well said in 1 Greenleaf on Evidence, § 277, “ is directed only against the admission of any other evidence of the language employed by the parties in making the contract, than that which is furnished by the writing itself. The writing, it is true, may be read by the light of surrounding circumstances, in oi’der, more perfectly to understand the intent and meaning of the parties ; but as they have constituted the writing to be the only outward and visible expression of their meaning, no other loords are to be added to it or substituted in its stead. The duty of the court in such cases is to ascertain, not what the parties may have secretly intended, as contra-distinguished from what their words express, but what is *295 the meaning of woi’ds they have used.” “Thoprincipie of admission is, that the court may he placed, in regard to the surrounding circumstances, as nearly as possible in the situation of the party whose written language is to be interpreted ; the question being, what did the person, thus circumstanced, mean by'the language he has employed.” Id. § 295, a.
Where a promissory note is made, or a bill of exchange drawn in the name of the agent, without showing the name of the principal on the face of the instrument, as a general rule the agent only, and not the principal, is liable. The intention of the parties in such a case is too plainly expressed to admit of any doubt, or to require any aid from the light of surrounding circumstances.
But this is not the case in regard to all instruments of writing connected with contract. As is further said in 1 Greenleaf on Evidence, § 305 a. : “ The rale that parol evidence is not admissible to vary or control a written contract, is not applicable to mere bills of parcels^ made in the usual form, in which nothing appears hut the names of the vendor and vendee, the articles purchased; with the prices affixed, and a receipt of payment by the vendor. These form an exception to the general rule of evidence, being informal documents, intended only to specify prices, quantities, and a receipt of payment, and not used or designed to embody and set out the terms and conditions of a contract of bargain and sale. They are in the nature of receipts, and ai’e always open to evidence, which proves the real terms upon which the agreement of sale was made between the parties.”
In such cases parol evidence to show an intention to make the principal, and not the agent liable, is perfectly consistent with the written evidence, and is, therefore, not inadmissible upon the ground that it contradicts or varies a written contract.
How, the case we have before us is just such a case. It is not the case of a formal promissory note or bill of *296 exchange, or a mere note in writing. But it is the case ai1 account of cattle bought of Maj. James Walker; but by or for whom bought, does not appear on the face of the paper. And at the foot of the account is written a note or order in these words: “Mr. Wm. M. Tate, you will please se'ttle with Maj. Walker the above ac’t. John Christian.”
Looking at this account aud order without the light of surrounding circumstances, we are in doubt as to their meaning: whether they mean that Christian bought these cattle for his own use and gave the order for payment on Tate, his debtor; or whether Christian bought them as agent of Tate, and gave the order merely to show that he had so bought them, and that the account was correct, and ought therefore to be paid by Tate. Each of these meanings is perfectly consistent with the writing, and the latter at least as much so as the former. What occasion was there for annexing the order to the account, if Tate had no interest in the account ? Why was not a mere order given if Christian was drawing for payment of his own debt, out of his own money, in Tate’s hands ?
But the parol evidence offered by Christian, and admitted by the court on the trial, made this matter perfectly plain, and showed that in fact, the contract of purchase was for and on account of the said Wm. M. Tate as principal, and that said defendant was acting as mere agent of the said Wni. M. Tate, and that the plaintiff had due notice of such agency. The parol evidence showed still more, as will presently be shown. But what has been just stated is enough for the present purpose. It is perfectly consistent with every word contained in the writing. Indeed, it makes perfectly plain what is otherwise obscure and doubtful; and is clearly admissible on ordinary principles which have already been fully stated.
Such would be the law if this were a case of mere and *297 ordinary private agency. But this is a case of public agency, as to which a different and peculiar, but well settled, principle applies, Story in his work on agency has a chapter devoted to this branch of the law, being chapter the 11th, pp. 306-312. “Hitherto we have been considering,” he says, “ the personal liability of agents on contracts with third persons, in cases of mere private agency. But a very different rule, in general, prevails in regard to public agents ; for in the ordinary course of things, an agent, contracting in behalf of the government, or of the public, is not personally bound by such a contract, even though he would be by the terms of the contract, if it were an agency of a private nature. The reason of the distinction is that it is not to be presumed, either that the public agent means to bind himself personally in acting as a functionary of the government, or, that the party dealing with him in his public character means to rely on his individual responsibility. On the contrary, the natural presumption in such cases is, that the contract was made on the credit and responsibility of the government itself, as possessing an entire ability to fulfil all its just contracts far beyond that of any private man ; and that it is ready in good faith to fulfil them with punctilious promptitude, and in a spirit of liberal courtesy. Great public inconveniences would result from a different doctrine, considering the various public functionaries, which the government must employ, in order to transact its ordinary business and operations; and many persons would be deterred from accepting of many offices of trust under the government if they were held personally liable upon all their official contracts. Take one example only: every officer in the army or navy, from the commander-in-chief downwards, who should enter into any official contract, or give any orders which would involve a contract, as for supplies or provisions, or military materials, might be held personally liable thereon to his utter ruin. A public agent may waive his *298 official immunity and make himself personally liable, on bis contract in behalf of government, or such personal liability may be implied from all the attendant circumstances. “ But in cases of such implied responsibility,” as Story well says, “the proofs ought to be exceedingly cogent and clear, in order to create such personal responsibility in a known public agent, and to repel the presumption of law, that he contracts only on the credit of the government.” Id. § 806.
The principle we are considering is stated, and the authorities in support of it, are cited in 3 Bob. Pr. 55, ch. 12. There is, perhaps, no principle of the law established more firmly, or by higher authority, both in England and in this country. The leading English case in support of it, is the great case of Macheath v. Haldimand, 1 T. R. 172, decided by the court of King’s Bench in 1786, Lord Mansfield being chief justice, and Willes, Ashurst and Buller his associates. The judges delivered their opinions seriatim, and all of them clearly and forcibly state the principle and the reasons on which it is founded. They were unanimous. The leading American case in support of the same doctrine is the equally great case of Hodgson v. Dexter, 1 Cranch’s U. S. R. 345, decided by the Supreme court of the United States in 1803, Marshall, chief justice, delivering the unanimous opinion of the court. That opinion is remarkable, no less for its precision and its force, than for its brevity. “It is too clear to be controverted,” say the court, “that when a public agent acts in the line of his duty, and by legal authority, his contracts, made on account of the government, are public and not personal. They enure to the benefit of, and are obligatory on the government; not the officer. A contrary doctrine would be productive of the most injurious consequences to the public as well as to individuals. The government is,incapable of acting otherwise than by its agents, and no prudent man would consent to become a *299 public agent, if he should be made personally responsible for contracts on the public account. This subject was very fully discussed in the case of Macheath v. Haldimand, cited from, first term reports ; and this court considers the principles laid down in that case as consonant to policy, justice and law.” After the decision of these two great leading cases, the courts in England and in this country have had little to do but to follow them in cases of the like kind subsequently occurring.
The principles settled in them directly and plainly apply to this case, if the Confederate government, in behalf of which the contract in question was made, can be considered as a government within the meaning of the rule. The evidence offered by the defendant tended to prove not only, as before stated, “that, in fact, the contract of purchase was for and on account of the said Wm. M. Tate, as principal, and that said defendant was acting as mere agent of the said Wm. M. Tate, and that the plaintiff had due notice of such agency;” but, “further, that said Wm. M. Tate was a major in service of the government of the Confederate States of America, and chief commissary in the district in which the cattle referred to in said paper were purchased. That the defendant was the purchasing agent of said Wm. M, Tate, commissary as aforesaid, and that the plaintiff well understood and knew in what character the defendant acted, that is, as government purchasing agent, under said Major Wm. M. Tate; and further, that the contract had been made before said paper writing was delivered; and that the cattle therein referred to had been previously delivered by the plaintiff’s agent to the agent of said Confederate States government; and further, that said cattle were sold by the plaintiff* to the defendant, as agent as aforesaid, for the purpose and to the' intent that the same should be used and consumed by the army of the Confederate States of Amei’ica, then *300 engaged in war with the United States, and the said eattle wei’e, in fact, so used and consumed.”
Then, can the Confederate government he considered as a government, within the meaning of the rule, is the i . question we now have to answer.
It is immaterial to enquire whether the said government was one de jure, or de facto only ; and if de facto only, for what purposes and to what extent it was a de facto government. That it was at least such a government, to a considerable extent and for many purposes, if not entirely and for all purposes, cannot be denied. Indeed, it has been expressly so decided, even by the Supreme court of the United States, in Thorington v. Smith, 8 Wall 1, in which Chief Justice Chase delivered the unanimous opinion of the court. It matters not that this “government was never acknowledged by the United States as a de facto government,” in a general sense, nor that it was not “ acknowledged as such by other powers.” Id. p. 9. It is admitted, indeed cannot be denied, “thatthe rights and obligations of a belligerent were conceded to it in its military character very soon after the war began,” by the United States ; id. p. 10 ; but whether “ from motives of humanity and expediency,” or otherwise, is immaterial. “ The whole territory controlled by it,” say the Supreme court, “ was thereafter held to be enemies’ territory, and the inhabitants of that territory were held, in most respects, for enemies. To the extent, then, of actual supremacy, however unlawfully gained, in all matters of government within its military lines, the power of the insurgent government cannot be questioned.” It is a great mistake to regard this government as a mere temporary and local outbreak or insurrection. It was not so regarded by the Supreme court of the United States, even as early as the second year of the war. In the Prize cases, 2 Black. U. S. R. 635, 673, decided in 1862, Mr. Justice Grier used this language : “ Hence, in organizing this rebellion, *301 they have acted as States claiming to be sovereign over all persons and property within their respective limits, and asserting a right to absolve their citizens from their aliegiance to the Federal government. Several of these States have combined to form a new confederacy, claiming to be acknowledged by the world as a- sovereign. State. Their right to do so is now being decided by wager of battle. The ports and territory of each of these States are held in hostility to the general government. It is no loose, unorganized insurrection, having no defined boundary or possession. It has a boundary marked by lines of bayonets, and which can be crossed only by force. South of this line is enemies’ territory, because it is claimed and held in possession by an organized, hostile and belligerent power.” Suppose the decision by this wager of battle had been different from what it was, as it well might have been ; how would this case then have stood ? Could it then have been said that the Confederate government was not a government within the meaning of the rule in question, when the debt involved in this case was created ? Suppose this suit had been tried during the war, would it have been then held that the Confederate government was not such a government ? Can the disastrous result of the war to the Confederate cause, pending the suit, make any change in the law by which the question in controversy is to be determined ? The Confederate government was perfectly organized and exercised supreme power over the vast territory within its limits during the four years of its existence. Its lawful authority was universally acknowledged by all persons who- were under its control, and most of them not only professed to be, but actually were, devoted to it, and anxious for its success. The plaintiff and the defendant in this action both appear to have been of that number. The defendant was an agent of the government to purchase supplies for the vast army employed in fighting its battles, and the plaintiff voluntarily *302 sold cattle to the defendant as such agent for the purpose affording food for that army. Can the plaintiff now say that the Confederate government was not a lawful government, and therefore the defendant, the mere agent -n |jUy^ng .¡-pg cattle for that government, is personally liable for the purchase money % As to these parties, and for all the purposes of this case, the Confederate States must be regarded as a government, either lawful or actual, when the purchase of the cattle was made ; and the defendant did not become personally responsible, unless it was plainly intended by the parties that he should be so. It is a question of intention merely, and in order to make the agent liable, the intention must be very clearly proved, all the presumptions of law and fact being the •other way.
But suppose it be admitted that the cattle were purchased to feed an army engaged in a mere rebellion or insurrection, and the act was therefore unlawful and trea■sonable—"What then ? Does it follow that the defendant is therefore personally liable to the plaintiff for the purchase money of the cattle ? By no means. The plaintiff', having voluntarily sold the cattle for the purpose aforesaid, is, in that view, a participant in the unlawful act, at least as guilty as the purchasing agent, and would be •barred from his recovery in this action against such •agent by one of the best settled principles of the law ; that, in pari delicto, potior est conditio defendentis.
I am therefore of opinion that there is no error in the judgment of the Circuit court, and that it ought to be affirmed.
-The other judges concurred in the opinion of Manicure, P.
Judgment arrirmed.